# Department of Justice Funding of Representation of Victims in Connection with a West German Prosecution

The Department of Justice may use its funds to pay for the representation of non-military American victims of the hijacking of TWA Flight 847, in connection with a West German prosecution, if it is determined that such representation would be in the interest of the United States.

June 8, 1988

MEMORANDUM OPINION FOR THE ACTING ASSOCIATE ATTORNEY GENERAL

The Criminal Division has asked this Office to render an opinion concerning the availability of Department of Justice funds to represent non-military American victims of the hijacking of TWA Flight 847, in connection with the West German government's prosecution of accused terrorist Mohammod Hamadei. Under West German law, victims of a crime can become co-complainants ("Nebenklaeger") with the public prosecutor, and as such are given access to the prosecutor's files and allowed to file pleadings, make arguments, and examine witnesses. As explained more fully below, we believe Department of Justice funds may be made available to pay for Nebenklaeger participation in the Hamadei prosecution, if such participation is determined to be the interests of the United States. Under the circumstances of this case, we believe that you are the appropriate departmental official to make this determination.[1]

## I. Background

Mohammod Hamadei is one of several Lebanese terrorists, who in June 1985, hijacked TWA Flight 847, held its passengers and crew hostage, and killed U.S. Navy diver Robert Stethem. In January 1987, Hamadei was arrested in Frankfurt, West Germany. The West German government denied the United States' request for his immediate extradition on grounds that it intended itself to prose-

---

[1] The determination in this case involves important issues of first impression, which have wide ramifications for our litigating activity in foreign courts. We therefore strongly recommend that it be made at least at the level of the Associate Attorney General. This seems to us particularly necessary here in light of the apparent position previously taken by your predecessor on the general question of the Department's authority to fund Nebenklaeger participation in this case. See infra note 3 In making your determination, you may wish to consult with the Civil Division, which, through its Office of Foreign Litigation, has been chiefly responsible for representing the government's interests in foreign courts. We understand that the Criminal Division has already been in touch with the Department of State respecting the subject matter of this memorandum.

cute him for offenses connected with the hijacking. The Attorney General has stated publicly on numerous occasions that the Department of Justice is committed to doing everything possible to ensure that Hamadei is convicted on all charges and receives the maximum sentence possible. We understand that his trial has now been scheduled to begin on July 5.

The question of this Department's ability to participate in or support the West German government's prosecution of Hamadei first arose last summer. In a letter dated August 17, 1987 Associate Attorney General Stephen S. Trott informed the General Counsel of the Department of Defense that under West German court procedure the United States government itself would not be permitted to intervene directly in the West German criminal case.[2] Moreover, he stated that the Department of Justice did not appear to be authorized to fund individual victims' Nebenklaeger participation.[3] Mr. Trott's letter also stated that the Department believed the Secretary of Defense had authority to fund such participation by the military victims of the hijacking under 10 U.S.C. § 1037,[4] and recommended that this be done. We understand that the Department of Defense has agreed to provide $300,000 for Nebenklaeger participation by the military personnel who were passengers on TWA Flight 847, as well as the parents of Mr. Stethem. A German attorney, Dr. Rainer Hamm, has been retained for this purpose.[5]

The question of this Department's ability to contribute to the funding of Nebenklaeger participation in this case has arisen again because the Criminal Division has apparently determined that Dr. Hamm's ability effectively to assist the Hamadei prosecution would be enhanced if he were able to represent at least some of the non-military American victims of the hijacking as well. Because the Department of Defense has authority to fund only the representation of military personnel, alternative sources would have to be found to pay the additional expense of extending Dr. Hamm's representational role.

---

[2] This conclusion was apparently based upon inquiries made in West Germany by the Civil Division

[3] His tentative conclusion appears to have been based upon informal advice received from the Chief of the Criminal Division's General Litigation and Legal Advice Section, based on a construction of 28 U.S.C. § 516. *See* routing and transmittal slip from Lawrence Lippe to Deputy Assistant Attorney General Toensing and Associate Attorney General Trott, dated August 3, 1987 Mr. Lippe addressed the question of the Department's authority more formally in March of this year, and concluded again that the Attorney General had no authority under 28 U.S C. §§ 516–519 to fund Nebenklaeger participation in the Hamadei prosecution. *See* Mr Lippe's Memorandum of March 16, 1988 to Ms. Toensing. In a memorandum sent the same day to the General Counsel of the Justice Management Division, Ms Toensing inquired whether Department funds were available to fund Nebenklaeger participation. JMD's response, dated April 20, 1988, was that funds could be expended under authority of 28 U.S.C. § 516 if it could be determined that "representing private citizens in a foreign tribunal is the type of interest encompassed under [section 516]." JMD disclaimed an ability to make such a determination in this case because of its unfamiliarity with the facts, and advised that the matter should be sent to this Office for construction Ms. Toensing forwarded the matter here on May 4.

[4] Section 1037 authorizes the Secretary of Defense to employ counsel and pay any expenses incident to the representation of military personnel before foreign judicial tribunals and administrative agencies.

[5] The relationship between a Nebenklaeger participant and his or her attorney under West German law is not clear to us In particular, we do not understand their respective roles in making litigation decisions We do not know whether there are in this case any specific arrangements between Dr. Hamm and the Department of Defense in this regard (or, indeed, whether under applicable West German law any such arrangements could be made in derogation of the Nebenklaeger client's wishes)

## II. Department of Justice Authority to Fund Nebenklaeger Participation in the Hamadei Prosecution

Under 28 U.S.C. § 516, the Department of Justice has general authority to "conduct" litigation in which the United States is a party "or is interested."[6] Along with the several provisions immediately following it in the Code, section 516 has been regarded as providing authority for the Attorney General to attend to the interests of the United States in any court, including foreign tribunals. *See Litigation Responsibility of the Attorney General in Cases in the International Court of Justice*, 4 Op. O.L.C. 233 (1980). Moreover, using his general authority to contract for services that are necessary to the performance of his statutory functions, the Attorney General may hire private lawyers to do indirectly what it would be awkward or inappropriate for the United States to do directly through departmental lawyers. *See* Memorandum for Edward C. Schmults, Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Civil Division's Recommendations Concerning Reimbursement of Legal Expenses* (June 24, 1981); Memorandum for Glen E. Pommerening, Assistant Attorney General for Administration, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel, *Re: Authority for Employment of Outside Legal Counsel* (Mar. 4, 1976). The Attorney General's authority to hire foreign counsel to represent the interests of the United States in the courts of a foreign country is explicitly recognized in 28 U.S.C. § 515(b).[7]

Applying the above principles to this case, we believe that the Department may use its funds to pay Dr. Hamm to represent victims of the hijacking, if it is determined that such representation would be "in the interests" of the United States.[8] Such a determination necessarily involves an analysis of the facts and circumstances involved in this case, and we can therefore give you only general guidance as to factors that might properly be considered. One thing seems clear to us, however: the existence vel non of a governmental interest in this case should not depend on the fact that the counsel we retain will technically be representing a private party, as opposed to the United States government itself. Particular procedural rules imposed by a foreign court will perforce dictate the manner in which the United States expresses its interest in a particular case, and the Department's ability to represent that interest cannot be made dependent upon the restrictions imposed upon our appearance by particular foreign courts. Here the United States apparently is precluded by West German court rules from expressing its interest directly in a criminal prosecution, so that we can support the prosecution only

---

[6] Section 516 provides in full as follows:

Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

[7] Under section 515(b), "foreign counsel" retained by the Attorney General in "special cases" are not required to take an oath of office.

[8] The Criminal Division's request to us did not extend to which particular sources of departmental funds might be available to pay for Nebenklaeger participation, and we express no views on this issue.

through representation of a victim. Despite the vehicle through which we are constrained to express it, however, the relevant interest remains that of the United States.[9]

That said, there remains the question whether the Department's funding of Nebenklaeger participation by non-military victims in this particular case would in fact serve the interests of the United States. While a court would almost certainly defer to an executive decision maker in this context,[10] there are at the same time no clear legal standards to guide that decision maker. At bottom, the existence of a governmental interest adequate to support Department of Justice funding in this case depends upon two things: the strength of our government's desire to combat international terrorism and to ensure the safety of American citizens overseas by any means available to it (and by this means in particular); and the extent to which further support by this Department for the Hamadei prosecution is likely to serve these goals.

As to the first of these considerations, we express no views.[11] As to the second, we would offer the following observations. The Department of Defense's decision to provide governmental funding to support the Hamadei prosecution may or may not have been based on a determination that this would be in the interests of the United States, as opposed to the personal interests of the military victims and their families.[12] If, upon inquiry, it develops that the representation presently being funded by Defense is perceived as serving the interests of the United States, and does in fact do so, the question would then arise whether further funding of the prosecution by this Department would serve some additional interest of the United States. In this regard, it would be relevant whether and to what extent Dr. Hamm's proposed representation of the non-military victims is

---

[9] In a similar situation last year, the United States was permitted to intervene directly, as a *partie civile*, in the French government's prosecution of Lebanese terrorist Georges Ibrahaim Abdallah for the murder of Lt. Col Charles Ray, an Assistant Military Attache at the U.S. Embassy in Paris. The Department paid a French attorney to represent its interests in connection with this prosecution, as well as those of the U.S. Consul General in Strasbourg, who had survived the terrorist attack. The Department of Defense paid this same attorney to represent the interests of Lt. Col. Ray's widow, under authority of 10 U.S.C. § 1037. *See* Memorandum for Stephen S. Trott, Associate Attorney General, from Victoria Toensing, Deputy Assistant Attorney General, Criminal Division (July 2, 1987).

[10] We do not believe that such cases in *United States v City of Philadelphia*, 644 F 2d 187 (3d Cir. 1980) (en banc), and *United States v. Solomon*, 563 F.2d 1121 (4th Cir. 1977) are relevant in this situation. These cases addressed the government's standing to sue as a jurisdictional matter and did not purport to limit the government's discretion under 28 U.S.C. § 516 Both cases involved the federal government's authority to initiate legal action in federal court to vindicate the rights of individuals, in areas that have traditionally been reserved to the States. The "public interest" asserted by the Executive as justification for the exercise of federal power in those cases was thus subject not only to the recognized limits on the jurisdiction of federal courts, but also to the powerful counterweight of federalism. No similar countervailing considerations are present in this case.

[11] We do not believe the federal government's participation in a foreign criminal justice system which expressly provides for participation of private prosecutors, in furtherance of its interest in combating international terrorism and protecting its citizens abroad, suggests anything about the appropriateness of allowing private prosecutors to control or participate in criminal prosecutions in our own federal courts. *Cf* Brief for the United States as Amicus Curiae in *Morrison v. Olson*, 487 U S. 654 (1988) at 37 and n 31.

[12] 10 U.S.C. § 1037 appears on its face to authorize representation of military personnel in foreign tribunals without regard to whether such representation would serve any interest of the United States We do not know generally how the Department of Defense has interpreted its authority under this provision, or what specific factors were considered in making the decision to provide funding in this particular case.

108

in fact likely to enhance his ability to support the prosecution through his existing representation of the military victims.[13] You may also wish to consider the degree of control the Department can expect to exercise over the proposed representation.[14] The fact that the individuals whose representation we would be funding are American citizens, and the apparent impossibility of their recovering damages or receiving any other personal benefit from their participation as Nebenklaeger, would tend to support an argument that the representation would serve the interests of the United States. On the other hand, especially in light of the fact that our funds are not unlimited, you may deem it more cost effective to pursue other means of combatting terrorism in this case (such as eventual further pursuit of our extradition efforts).

To assist you in making your determination, you may wish to ask the Criminal Division to provide you with further information relating to the efficacy of the additional representational activity for which funding is being sought, and on the extent to which the Department will be able to control Dr. Hamm's actions.

JOHN O. MCGINNIS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[13] We are aware of only one specific way in which representation of the non-military victims will add to what Dr. Hamm can accomplish under the existing arrangement with the Department of Defense. he will be able to interview and prepare those non-military victims who he represents prior to their being called as witnesses. *See* Toensing Memorandum to JMD, *supra* note 3 The Criminal Division has also suggested more generally that Dr. Hamm's role in the case would be made more "prominent" if he could represent more victims. We are not entirely sure what connection there might be between the prominence of Dr Hamm's role in the case and his ability effectively to represent the interests of the United States.

[14] For example, we do not know to what extent Dr Hamm's responsibility to his Nebenklaeger clients would preclude his taking direction from officials of the U.S. government that is paying his fees, in the event there were some difference of opinion as to the best way to proceed. Nor do we know whether the U S. government could control or countermand a decision by some or even all of the Nebenklaeger complainants to discontinue their participation in the prosecution The decision to fund representation in this case is thus quite different from that involved in the Abdullah prosecution in France, *see supra* note 4, in which the United States itself was a party and could thus ensure that the private counsel it had retained represented its interests in the proceeding. As noted above, *see supra* note 5, we do not know what if any arrangements the Department of Defense has made or could make with Dr. Hamm to ensure his carrying out the interests of the United States, if it differed from the interests of his individual Nebenklaeger clients. While the Defense Department may have some greater degree of control over some of the Nebenklaeger clients now being represented by virtue of their current military status, not all of these individuals are now subject to military discipline.